**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arquimides Rojo, | No. CV-20-00471-TUC-MSA |
| Plaintiff, | **ORDER** |
| v. | |
| Tucson Unified School District, | |
| Defendant. | |

Plaintiff Arquimides Rojo contends that his former employer, the Tucson Unified School District (the District), discriminated against him based on his national origin in violation of Title VII of the Civil Rights Act of 1964. The District now moves for summary judgment. The motion has been fully briefed and is suitable for decision without oral argument. For the reasons given below, the motion will be denied.

### Background[1]

The District hired Plaintiff as a fleet service technician in 2002. (Doc. 37-1 at 8.) This job required Plaintiff to hold a commercial driver's license (CDL) with an endorsement to drive a school bus. (Doc. 33 at 8.) In his job, Plaintiff performed routine maintenance on school buses and drove empty buses short distances on city streets. (*Id.* at 8, 47.) Plaintiff's supervisor, Kenneth Bolle, described Plaintiff as "productive" and his work as "satisfactory." (*Id.* at 49.)

In 2012, Plaintiff was transferred to the District's "central" location, where he began

---

[1] Record citations refer to the page numbers generated by the Court's electronic filing system.

having daily interactions with Bolle.[2] (*Id.* at 48.) Plaintiff, a Mexican national who speaks Spanish and only a little English, says that Bolle told him not to speak Spanish in the workplace. (*Id.* at 61.) Plaintiff also says that Bolle told other employees not to speak to him in Spanish. (*Id.*) This occurred, according to Plaintiff, "almost always." (*Id.*) Plaintiff also asserts that Bolle often stood behind him while he worked and "scold[ed]" him for failing to submit reports. (*Id.* at 60, 68.) Plaintiff asserts that Bolle did not engage in such conduct towards employees who were not Mexican nationals. (*Id.* at 60–61, 68.)

In mid-2018, the District's risk manager, Nicole Lowery, informed Bolle that Plaintiff was ineligible to drive because he had incurred too many points against his driver's license. (*Id.* at 11–12.) Citing this alleged violation of District policy, Bolle terminated Plaintiff's employment. (*Id.* at 17.) Plaintiff administratively appealed his dismissal. (*Id.*) In October 2018, the hearing officer determined that Plaintiff had not violated the points policy and ordered that he be reinstated. (*Id.* at 19–20.) During the hearing, however, the officer became aware that Plaintiff had a second fulltime job. (*Id.* at 19.) In her written decision, the officer expressed concern about whether Plaintiff's hours (about 80 per week) affected his ability to drive a school bus for the District. (*Id.* at 19–20.)

Rather than allowing Plaintiff to return to work, Bolle put Plaintiff on paid home assignment. (*Id.* at 25.) A few weeks later, Bolle emailed the District's traffic safety and training manager to inquire about CDL hours of service. (*Id.* at 27–28.) The safety manager responded by quoting a Department of Public Safety regulation providing that no person can drive a school bus after having been on duty for more than 60 hours in a seven-day period. (*Id.* at 27.)

Bolle terminated Plaintiff's employment again in December 2018. (*Id.* at 30–33.) According to the termination letter, Plaintiff was fired because his second job rendered him ineligible to drive a school bus under state law. (*Id.* at 32.) After his administrative appeal was denied, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, which issued him a right-to-sue letter. (*Id.* at 41; Doc. 1, ¶ 5.)

---

[2]   Plaintiff and Bolle also shared the same work location between 2002 and 2004. (Doc. 37-1 at 8.) Bolle was not Plaintiff's supervisor during that period. (*Id.*)

This lawsuit followed.

## Legal Standard

A party is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must then "go beyond the pleadings" and produce evidence "showing that there is a genuine issue for trial." *Id.* at 324. When determining whether summary judgment is appropriate, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).

## Discussion

The District seeks summary judgment on Plaintiff's claim of disparate treatment. *See* 42 U.S.C. § 2000e-2(a)(1) (making it unlawful "for an employer . . . to discharge any individual . . . because of such individual's . . . national origin"). To succeed on such a claim, the plaintiff "must offer evidence that 'gives rise to an inference of unlawful discrimination,' either through the framework set forth in *McDonnell Douglas Corp. v. Green* or with direct or circumstantial evidence of discriminatory intent." *Freyd v. Univ. of Or.*, 990 F.3d 1211, 1228 (9th Cir. 2021) (quoting *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003)). "Either way, [federal courts] require 'very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by the factfinder, upon a full record.'" *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 691 (9th Cir. 2017) (quoting *Schnidrig v. Colom. Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996)).

The parties here proceed under the *McDonnell Douglas* three-step framework, so the Court will do the same. As discussed below, the Court finds that Plaintiff has shown a triable issue.

## I. Prima Facie Case.

At the first step of the framework, the plaintiff must satisfy the elements of a prima facie case: "(1) [he] belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Reynaga*, 847 F.3d at 691 (first citing *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010); and then citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)). Here, the District disputes only the second and fourth elements. In reviewing these elements, the Court remains cognizant that "[t]he requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

### A. Satisfactory Performance.

The second element is satisfied if the plaintiff was "qualified" and performing his job "satisfactorily." *Hawn*, 615 F.3d at 1156 (citing *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004)). As required by the District, Plaintiff held a CDL with the appropriate endorsement. (Doc. 33 at 62.) In addition, Plaintiff's supervisor, Bolle, described Plaintiff as "productive" and his work as "satisfactory." (*Id.* at 49.) This evidence satisfies Plaintiff's minimal burden.

According to the District, Plaintiff was not performing satisfactorily because he had too many on-duty hours to drive a school bus. However, this is the District's proffered reason for terminating Plaintiff's employment—a reason which Plaintiff contends was pretextual. An employer cannot defeat the plaintiff's prima facie case at step one by arguing that its proffered reason proves that the plaintiff was not performing satisfactorily. *See Lynn*

*v. Regents of Univ. of Cal.*, 656 F.2d 1337, 1344 (9th Cir. 1981) ("Under some views of the *McDonnell Douglas* analytical process, the University's articulated reason and supporting evidence might be considered at step one of that process, i.e., in connection with plaintiff's prima facie showing that she possesses the requisite qualifications for tenure. We think it preferable, however, to consider the University's arguments at steps two and three."). Indeed, the United States Supreme Court has made clear that when the employer proffers a reason for its actions, "[t]he plaintiff *must* be given the opportunity to introduce evidence that the proffered justification is merely a pretext for discrimination." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 578 (1978) (emphasis added). The District's approach would "collapse the three step analysis into a single initial step at which all issues would be resolved. This would defeat the purpose underlying the *McDonnell Douglas* process." *Lynn*, 656 F.2d at 1344. As such, the Court will defer discussion of the District's proffered reason until steps two and three.

### B. Inference of Discrimination.

The fourth element is satisfied if the "circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Reynaga*, 847 F.3d at 691 (first citing *Hawn*, 615 F.3d at 1156; and then citing *Godwin*, 150 F.3d at 1220). Here, Bolle allegedly prohibited Plaintiff from speaking Spanish in the workplace although that is his primary language. (Doc. 33 at 61.) In addition, although Plaintiff speaks little English, Bolle allegedly required other employees to speak to him in English. (*Id.* at 60–61.)

This evidence is more than sufficient to establish a prima facie case. "The primary language of an individual is often an essential national origin characteristic. Prohibiting employees at all times, in the workplace, from speaking their primary language . . . disadvantages an individual's employment opportunities on the basis of national origin." 29 C.F.R. § 1606.7(a). Bolle's conduct—barring Plaintiff from speaking his primary language, "an essential national origin characteristic"—is evidence of discriminatory animus based on national origin. *Id.* Furthermore, when, as here, "the person who exhibited discriminatory animus influenced or participated in the decisionmaking process, a

reasonable factfinder could conclude that the animus affected the employment decision." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1039–40 (9th Cir. 2005) (citing *Mondero v. Salt River Project*, 400 F.3d 1207, 1213 (9th Cir. 2005)).

The District argues that Plaintiff cannot satisfy the fourth element because he has identified no similarly situated employees who were treated more favorably. This argument is unavailing. The Supreme Court has made clear that the elements of a prima facie case will vary depending on the circumstances. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977); *see Hawn*, 615 F.3d at 1156 ("It is true that the elements and contours of a prima facie case will differ according to the facts at hand."). Plaintiff need not show that similarly situated employees were treated more favorably so long as "other circumstances surrounding [his dismissal] give rise to an inference of discrimination." *Hawn*, 615 F.3d at 1156 (quoting *Peterson*, 358 F.3d at 603). Plaintiff's testimony that Bolle—the person who fired him—barred him from speaking his primary language in the workplace is evidence of such circumstances.

Moreover, Plaintiff *did* offer evidence that other technicians received more favorable treatment. He testified that Bolle frequently stood behind him while he worked but did not watch other employees in the same manner. (Doc. 33 at 60, 68.) He also testified that Bolle "scold[ed]" him on the rare occasions he failed to submit a report, but that Bolle did not similarly criticize other employees who failed to submit reports. (*Id.* at 68.) According to Plaintiff, none of the other employees were Mexican nationals.[3] (*Id.* at 61.) This testimony is additional evidence supporting Plaintiff's claim. *See Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1117–18 (9th Cir. 2011) (finding a triable issue where the age-discrimination plaintiff was disciplined more harshly than younger employees who had engaged in the same misconduct).

The District next argues that because Plaintiff was "unable to articulate specific instances of conduct" or "recall when . . . discriminatory conduct occurred," his testimony

---

[3] Plaintiff testified that he could tell from his interactions with his coworkers that they were not Mexican (e.g., because of the way they spoke). (Doc. 33 at 61.) Although this is not a foolproof method of determining a person's national origin, it is not so unreasonable as to warrant the rejection of Plaintiff's testimony at the summary-judgment stage.

- 6 -

is insufficient to create a triable issue. However, Plaintiff testified quite clearly that Bolle "almost always" told him not to speak Spanish. He was also clear that Bolle often treated him less favorably than other employees. Thus, he has provided enough detail about the substance and frequency of Bolle's alleged statements and conduct "to enable a reasonable trier of fact to conclude that discrimination had occurred." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 n.5 (9th Cir. 2004). Moreover, "a plaintiff need not recite precise dates of an employer's discriminatory conduct, especially where she alleges that the conduct was pervasive. While a factfinder is free to conclude at trial that the plaintiff's account is insufficiently detailed to be believable, the district court must refrain from making such credibility assessments on summary judgment." *Dominguez-Curry*, 424 F.3d at 1039.

### C. Conclusion.

Plaintiff has met his minimal burden to establish a prima facie case.

## II. Legitimate, Nondiscriminatory Reason.

At the second step of the framework, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To satisfy this burden, the employer "must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 (1981). Here, the District presents evidence that Plaintiff was fired because his second job rendered him ineligible to drive a school bus. (Doc. 33 at 30–33 (termination letter).) As the District has carried its burden of production, "'the presumption raised by the prima facie case is rebutted' and 'drops from the case.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Burdine*, 450 U.S. at 255 & n.10).

## III. Pretext.

At the final step of the framework, the burden shifts back to the plaintiff to show that the proffered reason is pretextual, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256.

The amount of evidence required to create a triable issue regarding pretext is "minimal." *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1127 (9th Cir. 2009).

In this case, Plaintiff satisfies his minimal burden with circumstantial evidence. Circumstantial evidence creates a triable issue only if it is "specific" and "substantial." *Godwin*, 150 F.3d at 1222. Plaintiff, a Mexican national, was barred from speaking his primary language—"an essential national origin characteristic"—in the workplace. (Doc. 33 at 61); 29 C.F.R. § 1606.7(a). The person who fired Plaintiff—Bolle—is the person who barred Plaintiff from speaking his primary language. (Doc. 33 at 61.) In addition, Bolle treated Plaintiff less favorably than other employees who were not Mexican nationals. This disparate treatment included more intense supervision, despite Plaintiff's satisfactory performance, and harsher criticism for misconduct that was also committed by other employees. (*Id.* at 60, 68.)

This testimony is specific and substantial evidence that discriminatory animus was a motivating factor in Bolle's decision. *See France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015) (stating that the specific-and-substantial standard is "tempered" by recognition of the fact that "a plaintiff's burden to raise a triable issue of pretext is hardly an onerous one" (quoting *Earl*, 658 F.3d at 1113)). Furthermore, Plaintiff highlights at least two other circumstances supporting his claim of pretext. First, according to Plaintiff, he was not offered the opportunity to quit his second job, although that job was the only reason given as to why he could not work for the District. (Doc. 36-2 at 13.) Second, although there is evidence suggesting that Plaintiff's inability to drive a school bus (for only 15 minutes per day) could have been accommodated, Bolle instead terminated Plaintiff. (Doc. 37-1 at 4.) In the context of Bolle's other conduct, these circumstances provide additional evidence of pretext. *See Nicholson*, 580 F.3d at 1127 ("When the evidence, direct or circumstantial, consists of more than the *McDonnell Douglas* presumption, a factual question will almost always exist with respect to any claim of a nondiscriminatory reason." (quoting *McGinest*, 360 F.3d at 1124)).

None of the District's arguments to the contrary are persuasive. The District initially

contends that Plaintiff abandoned his claim of discrimination during his deposition. This contention is based on the following exchange:

> Q: You said in response to a question from your lawyer that you believed that having a second job was just an excuse to terminate your employment?
> A: It was an excuse from Ken Bolle to terminate my employment.
> Q: What evidence do you have that that was not the real reason for terminating your employment?
> A: He's taken advantage of that excuse in order to terminate my job. He's taken advantage of that because that was a point for him to take advantage of.
> Q: That's not my question. What evidence do you have that that is not the real reason your job was terminated?
> A: I'm not understanding the question.
> Q: Do you believe that the real reason you were terminated was because you had a second job?
> A: Him, yes.

(Doc. 33 at 69.)

According to the District, the last answer ("Him, yes") is an admission by Plaintiff that no discrimination occurred. However, considering that this case is at the summary-judgment stage, the Court cannot accept the District's interpretation. Only moments before giving the answer in question, Plaintiff made clear that he believed his second job was a pretext for discrimination. Plaintiff then expressed confusion about what was being asked. Indeed, Plaintiff's reference to "Him" indicates confusion about the question, which sought a simple yes-or-no answer. Furthermore, Plaintiff had already twice indicated that he believed his second job was a pretext for discrimination. (*Id.* at 61, 67.) He also stated that the reason for his first dismissal (i.e., too many points against his license) was pretextual. (Doc. 36-2 at 12.) In this context, the Court disagrees that Plaintiff recanted the entire basis for his lawsuit.

The District also argues that, to the extent Bolle watched and criticized Plaintiff, he was simply doing his job as a supervisor. This is a reasonable interpretation of Bolle's conduct, but it is not the only one. Plaintiff testified that Bolle did not scrutinize other employees the same way. When paired with Bolle's alleged prohibition of Spanish, this evidence gives rise to an inference of discrimination. *See Chuang v. Univ. of Cal. Davis,*

*Bd. of Trs.*, 225 F.3d 1115, 1129 (9th Cir. 2000) ("It is not the province of a court to spin . . . evidence in an employer's favor when evaluating its motion for summary judgment. To the contrary, all inferences must be drawn in favor of the non-moving party.").

Finally, the District points out that "Plaintiff was only terminated after Lowery told Bolle he could not drive a school bus," and that Plaintiff has no "reason to believe that she discriminated against him." Although true, this does not change the fact that a reasonable jury could infer that Bolle, the ultimate decisionmaker, was motivated at least in part by discriminatory animus. *See Dominguez-Curry*, 424 F.3d at 1040 (holding a jury could "find that animus affected the ultimate hiring decision" based on the discriminator's involvement in the decisional process, even though the discriminator "never communicated his bias to" the hiring manager and even if the hiring manager "himself was not biased").

As a closing matter, the Court acknowledges that most of the evidence in Plaintiff's favor is disputed, and that the District presents strong evidence supporting its position that it dismissed Plaintiff for a legitimate reason. As to the first point, at summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). As to the second point, "it is irrelevant whether 'the record amply supports'" the District's proffered reason for firing Plaintiff. *Dominguez-Curry*, 424 F.3d at 1042. Plaintiff need only show that there is a triable issue as to whether national origin was "*a* motivating factor," 42 U.S.C. § 2000e-2(m) (emphasis added), and he can do so with "very little evidence," *Reynaga*, 847 F.3d at 691 (quoting *Schnidrig*, 80 F.3d at 1410). He has cleared that threshold here. Therefore,

**IT IS ORDERED** that the motion for summary judgment (Doc. 32) is **denied**.

**IT IS FURTHER ORDERED** that the motion for oral argument (Doc. 45) is **denied**.

Dated this 28th day of September, 2022.

_____
Honorable Maria S. Aguilera
United States Magistrate Judge